UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NORTH DAKOTA

WESTERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | 1:17-CR-00111 |
| Plaintiff, | |
| vs. | DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS |
| CLIFFORD SEE WALKER, | |
| Defendant. | |

_____

Defendant Clifford See Walker submits this memorandum of law in support of his motion to suppress. In this case, See Walker could not voluntarily consent to the interrogations conducted on or about April 25, 2017 due to his mental health condition, lack of sleep, and intoxication of alcohol and methamphetamine. As a result, See Walker could not voluntarily, knowingly, and intelligently waive his Fifth Amendment privilege against self-incrimination and right to remain silent.

## **FACTS**

On April 25, 2017, the alleged female victim's mother reported a sexual assault within her home in Fort Yates, North Dakota to tribal law enforcement. The alleged victim (herein "R.I.") reported that the male woke her as she was sleeping in a bed, which was located in the basement. The male had begun stroking her hair and eventually began kissing her. She admitted she was under the influence of medication that had made her drowsy. She did note several times that she could smell alcohol emitting from the male. R.I. said the male next attempted to have sex with her, but she could not say with certainty whether he had penetrated her with his penis.

Law enforcement eventually located the male suspect, later discovered to be See Walker, and placed him under arrest. According to law enforcement reports, See Walker was made aware of his "SRST rights." However, the encounter does not appear to have been recorded. While handcuffed and being escorted toward a patrol car See Walker allegedly said "it" was consensual and that he wore a condom. He also said, "sorry."

During the jail booking process, law enforcement conducted a preliminary breath test on See Walker which revealed that See Walker was under the influence of alcohol. At this time, See Walker revealed that he was suicidal. This caused law enforcement to take See Walker to IHS for medical clearance. At IHS, See Walker remained in custody. He remarked that he ran from the scene because he was a bad person. See Walker also mentioned he received a hickey from R.I. during the encounter. On the return trip to jail, law enforcement told See Walker that they had "a lot" of evidence against him including DNA evidence.

Later that day, at approximately 8:24 p.m., FBI agents interviewed See Walker. According to a Form 302 disclosed through discovery, See Walker was *Mirandized* and acknowledged he understood and waived those rights. According to the 302, See Walker did so verbally. There is no indication that he was provided with a written waiver of rights under *Miranda*. The interview followed. A copy of the audio recorded interview indicates See Walker's *Miranda* rights were read. Upon being asked if he understood his rights, there is no audible response. At some point during the interview, See Walker disclosed that, in addition to drinking, he had taken methamphetamine among other substances. Nevertheless, agents continued the interview. During the interview, See Walker made several incriminating responses. However, much of what See Walker disclosed involved detailed descriptions of events that do not appear in any statements that

R.I reported. R.I. provided multiple accounts to responding officers, the FBI, a SANE nurse, and other medical professionals. See Walker's imaginative details included recollections of statements that he believed he made as well as statements made by R.I. These description were objectively irrational and clearly untrue. Yet, that too did not cause agents to discontinue the interview.

## ARGUMENT AND AUTHORITIES

Statements made by See Walker upon his arrest and later during the formal interview should be suppressed from evidence because they were made involuntarily in violation of the Fifth Amendment privilege against self-incrimination. "A waiver of the Fifth Amendment privilege against self-incrimination is valid if the waiver is made voluntarily, knowingly and intelligently." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) *citing Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Gaddy, 532 F.3d 783, 788 (8th Cir. 2008). "To determine whether a waiver or a confession was voluntary, a court looks at the totality of the circumstances and must determine whether the individual's will was overborne." *United States v. Castro-Higuero*, 473 F.3d 880, 886 (8th Cir. 2007) *citing United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002). Sleeplessness, alcohol use and drug use are relevant factors. *United States v. Casal,* 915 F.2d 1225, 1229 (8th Cir.1990).

Here, See Walker did not provide a voluntary waiver of his Fifth Amendment privilege against self-incrimination because at the time of each interrogation he was sleep deprived, under the influence of methamphetamine and alcohol, and under intense emotional distress. Following jail booking protocol, law enforcement conducted a preliminary breath test which revealed that See Walker was under the influence of alcohol. Law enforcement later learned that See Walker

provided statements indicating he was experiencing suicidal ideations. Law enforcement also knew See Walker had been sleep deprived for several days and that he was under the influence of methamphetamine at the time of his arrest. *See Gaddy*, 532 F.3d at 788 (factoring favorably to the government the fact that the defendant did not disclose recent drug use or tiredness).

Although IHS cleared See Walker to be booked into jail, it does not follow that he was able to voluntarily waive his Fifth Amendment privilege against self-incrimination and right to remain silent. As the recorded interview suggests, he did not outwardly acknowledge an understanding of his rights and his ability to waive those rights. Instead, the audio reveals silence. The government may respond that the See Walker appeared in control of his faculties during the interview, however, as noted above law, enforcement knew he was drunk. They knew he was presently struggling with mental health. They did not conduct, nor suggest, a drug test to determine whether See Walker had methamphetamine in his system. Knowing See Walker was not of sound mind for those reasons, the interview proceeded and See Walker provided his recollection of events. See Walker's version of the offense was odd. He slurred his words. It is apparent that he was not well oriented to time and space despite providing detailed information. The details he did provide were nonsensical and inconsistent with the victim's recollection. Under the totality of circumstances, therefore, it is apparent that See Walker's state of mind was of such deficiency to render his *Miranda* waiver and his following statements involuntary.

## **CONCLUSION**

Wherefore, the Defendant Clifford See Walker requests that this Court suppress all statements he made to law enforcement upon and subsequent to his arrest in this case. Moreover,

See Walker requests a hearing on this matter to further develop facts in support of the underlying motion and this memorandum of law.

>Respectfully submitted,
>
>NEIL FULTON
>Federal Public Defender
>By:
>
>*/s/ Christopher P. Bellmore*
>Christopher P. Bellmore
>Assistant Federal Public Defender
>Attorney for Defendant
>Office of the Federal Public Defender
>Districts of South Dakota and North Dakota
>324 North 3rd Street, Suite 1
>Bismarck, ND 58501
>Telephone: 701-250-4500 Facsimile: 701-250-4498
>filinguser_SDND@fd.org