# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NORTH DAKOTA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:17-cr-111 |
| Plaintiff, | |
| vs. | DEFENDANT'S SENTENCING MEMORANDUM |
| CLIFFORD SEE WALKER, | |
| Defendant. | |

Comes now the Defendant, through his attorney, Assistant Federal Public Defender Christopher P. Bellmore, and submits this memorandum in anticipation of the sentencing hearing scheduled for June 12, 2018.

## Sentencing Guidelines

See Walker objects only to the PSIR's career offender designation. The PSIR found See Walker's adjusted offense level to be 30. PSIR ¶19. It adjusted the offense level to 37 designating See Walker as a career offender. PSIR ¶ 20. Without the designation, he would have a total offense level of 31 (after acceptance) and fall within criminal history category VI. This results in a range of 188 to 235 months.

See Walker is not a career offender. A defendant is a career offender if:

> (1) the defendant was at least eighteen-years-old at the time the defendant committed the instant offense of conviction; (2) the instant conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior convictions of either a crime of violence or a controlled substances offense."

USSG § 4B1.1(a). A crime of violence means:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm…

USSG § 4B1.2(a).

See Walker's prior convictions for Assault on a Federal Officer were each in violation of 18 U.S.C. § 111(a). PSIR ¶¶ 38 (Exhibit 1), and 40 (Exhibit 2). The Eighth Circuit has not addressed whether 18 U.S.C. § 111(a) qualifies as a crime of violence. Assault on a Federal Officer is not a specifically enumerated offense under § 4B1.2(a)(2). Therefore, to qualify as a crime of violence, 18 U.S.C. § 111(a) must qualify under the force clause. The guidelines' force clause requires that the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a)(1). "Physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). A statute that criminalizes any level of force, including *de minimis* contact, does not meet this standard. *See United States v. Eason*, 829 F.3d 633, 641-42 (8th Cir. 2016).

Courts apply the categorical approach to determine whether an offense qualifies as a crime of violence. *See Mathis v. United States*, 136 S. Ct. 2243 (2016). Under this approach, the court compares the elements of the crime of conviction with the elements of the generic crime or the force clause, considering the lowest

2

level of conduct that may support a conviction under the relevant statute. *Descamps v. United States*, 133 S. Ct. 2276 (2013); *United States v. Bell*, 840 F.3d 963, 966 (8th Cir. 2016). "Sentencing courts may look only to the statutory definitions—i.e., the elements—of a defendant's prior offenses, and not to the particular facts underlying those convictions." *Descamps*, 133 S. Ct. at 2283. "The key" under the categorical approach "is elements, not facts." *Id*. "When a statute comprises multiple, alternative versions of the offense to which a defendant pleaded guilty, the modified categorical approach is used to determine which statutory phrase, contained within a statute listing several different crimes, covers a prior conviction." *United States v. Irons*, 849 F.3d 743, 747 (8th Cir. 2017).

However, courts only employ the modified categorical approach when a prior conviction is based on a "divisible statute," or one that "sets out one or more elements of the offense in the alternative," that includes both violent and non-violent conduct. *Descamps*, 133 S. Ct. 2281-84. The Supreme Court has emphasized that the statutory phrases listed in the alternative must be elements, not means. *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). 18 U.S.C. § 111 creates three distinct offenses. Section 111(a) proscribes two: (1) a misdemeanor simple assault that does not involve actual physical contact; and (2) a felony assault that involves actual physical contact or the intent to commit certain felonies, but does not result in bodily injury or involve the use of a deadly or dangerous weapon. Section 111(b) proscribes the third, which is a felony assault that involves a weapon or results in bodily injury. *See generally* 18 U.S.C. §§ 111(a) and (b).

3

In analyzing ACCA's force clause, the Tenth Circuit has described the inapplicability of the modified categorical approach in the context of the "regular" Assault on a Federal Officer statute.

> Unlike 18 U.S.C. § 111 as a whole, § 111(a)(1) is not divisible, because forcibly assaults, resists, opposes, impedes, intimidates, or interferes are not elements, but alternative means of committing the *actus-reus* element of the offense. The modified categorical approach cannot be used to determine which of the six means a defendant pled guilty to employing to commit the offense.

*United States v. Ama*, 684 Fed. Appx. 736, 739 (10th Cir. 2017). Therefore in this case just as in *Ama*, the modified approach cannot be used to determine the means for which See Walker pled guilty. *Id.* citing *Mathis*, 136 S. Ct. at 2257.

In analyzing § 111(a) under the categorical approach, the Tenth Circuit held an 18 U.S.C. § 111(a) conviction does not qualify as a crime of violence, because mere forcible contact sustains a conviction under this statute. *Ama*, 684 Fed. Appx. at 742. Mere forcible contact is insufficient, because "physical force," meaning "violent force that is, force capable of causing physical pain or injury to another person" is required for an offense to constitute a violent felony. *Id.* quoting *Johnson*, 559 U.S. at 140.

The Ninth Circuit has also held that an 18 U.S.C. § 111(a) conviction does not qualify as a crime of violence, because it "does not require proof . . . that the defendant used, attempted to use, or threatened to use physical force as defined in *Johnson*. The statute requires proof of at least some form of assault, but an assault under § 111 does not require that any particular level of force be used." *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2013).

4

In an unpublished opinion, the Third Circuit held that 18 U.S.C. § 111(a) qualified as a crime of violence. *See generally, United States v. Green*, 543 F. App'x 266 (3d Cir. 2013). That decision, however, rested on both the force clause and the now deleted residual clause of the § 4B1.2 guideline. *Id.* Further, the Third Circuit arrived at this determination by applying the modified categorical approach, which is inappropriate under *Mathis*. *See Ama*, 684 Fed. Appx. at 739, citing *Mathis*, 136 S. Ct. at 2257.

See Walker's convictions for Assaulting a Federal Officer in violation of 18 U.S.C. § 111(a) do not qualify as a crime of violence within the meaning of § 4B1.2. He is not a career offender. Therefore, See Walker's guideline range should be 188-235. This based on a total offense level of 31 and a criminal history category of VI.

<u>18 U.S.C. § 3553(a) Factors</u>

See Walker respectfully requests a sentence within the 188-235 guideline range. A guideline sentence is warranted under 18 U.S.C. §3553(a)(1). A guideline sentence would provide both general and specific deterrence. It would provide See Walker more than enough time to undergo rehabilitative services while imprisoned. It would adequately protect the public.

The nature and the circumstances of the offense warrant a guideline sentence. The victim disclosed that during the encounter See Walker penetrated her "a little" and "she felt his penis inside of her." PSIR ¶ 4. She said See Walker smelled of alcohol, but was not being violent. Her recollection did not indicate prolonged sexual contact, but intense, frightening moments where See Walker attempted to engage in sexual

5

intercourse. The victim reported taking over-the-counter sleep medication hours before the incident and being asleep when See Walker entered her home. She was otherwise coherent.

See Walker was under the influence of alcohol, methamphetamine, codeine, and methyl. He reported he was sleep deprived. He said he was suicidal. It does not excuse his conduct, but places in context his odd interview to law enforcement where he admitted more than what actually occurred. See Walker told officers he entered the home looking for an acquaintance. PSIR ¶ 7. (He entered the wrong residence. His purpose was not to see the victim). He said he conducted a perimeter sweep. *Id*. See Walker recalled the victim telling him, "Hey, hey, hey, come here. . . .What are you doing?" *Id*. The victim did not mention this greeting. See Walker said he kissed her. The victim admitted no such thing. His detailed description of what ensued did not match the victim's version of events.

Despite See Walker admitting more severe conduct, the victim's recollection is more plausible. Only drowsiness affected her memory. See Walker was (voluntarily) under the influence of several substances. He admitted to law enforcement a version that never occurred. This provides context not only about whose version was closer to the truth, but also about See Walker's confused state of mind.

He did not break into the victim's home intending to engage in illicit sexual conduct. While inside the home, however, he admittedly committed sexual abuse. Fortunately, the victim was not otherwise harmed or explicitly threatened. Upon

considering the circumstances and nature of the offense, a guideline sentence is warranted.

See Walker's history and characteristics are well-known. He has appeared before this Court several times for sentencings and revocation hearings. Past sentencing memoranda have detailed his upbringing which inevitably led him into the criminal justice system where he has remained for several years. This Court can recall his allocution statements and prior presentence reports. The best source of information, however, comes from his mother's letter to the Court. DCD 48. She writes:

> I feel Cliff is a good man. He would help anyone in need… He has always been a friend to anyone who needed one. He's protected and watched over his family. He is smart and sincere. He loves to read books and learn new things. Unfortunately, he really had no male role [models] in his life.

DCD 48, pp. 2, 3. He likely will find no role models in prison. See Walker will have to try new things and new methods to learn how to live outside of prison. He must trust the provided resources and programming to develop pro-social attitudes and a desire to live a law abiding lifestyle. Clifford's biggest mistake is the instant offense which stands in front of a long line of prior mistakes. Rehabilitative services have yet to work. But See Walker is human. He comes from a family who loves him and who will count the hours until he is released. A guideline sentence would involve sufficient time to accomplish those goals.

See Walker is only 27 years old. He has experienced a lifetime of hardship. His step-father abused him. DCD 48, p. 4. He started using drugs at age 9. PSIR ¶ 70. He

used every day, or at least at every opportunity. He did not graduate from high school. His entire work experience spans less than three months. He's lived under the influence for most of his life. He's lived with no direction and without a home. Life has not been easy. On more than one occasion, See Walker has been released from prison with nowhere to go but back to the same environment that enabled previous relapses and re-offenses. By far, this will be his most substantial sentence. The sentencing factors establish that a guideline sentence (as discussed above) would be sufficient but not greater than necessary. A guideline sentence will remove See Walker from the community for several years, but the Court's sentence should afford him the ability to rehabilitate and re-enter society.

Dated this 1st day of June, 2018.

NEIL FULTON
Federal Public Defender
By:

*/s/ Christopher P. Bellmore*
Christopher P. Bellmore
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
324 North 3rd Street, Suite 1
Bismarck, ND 58501
Telephone: 701-250-4500; Facsimile: 701-250-4498
filinguser_SDND@fd.org